Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| GRACE RAMOS TREVIÑO, NANCY I. CRESPO DONES, ERICK G. OLMEDA BÁEZ, ROSALÍA ABREU ROSARIO, YAINA L. CARTAGENA PEÑA, EDNA G. RIVERA ROSADO, DIANA LÓPEZ RIJOS Y YOLANDA OTERO DELGADO  Apelante  v.  GVC PUERTO RICO LLC  Apelado | TA2025AP00553 | Apelación procedente del Tribunal de Primera Instancia, Sala de Fajardo  Caso Núm. FA2024CV00110  Sobre:  Ley Núm. 80, Ley Núm. 2 |
|---|---|---|

Panel integrado por su presidenta la Jueza Grana Martínez, el Juez Ronda Del Toro, la Jueza Lotti Rodríguez.

*Grana Martínez, Jueza Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 27 de febrero de 2026.

La parte apelante compuesta por Grace Ramos Treviño, Nancy I. Crespo Dones, Erick G. Olmeda Baez, Rosalía Abreu Rosario, Yaina L. Cartagena Peña, Edna G. Rivera Rosado, Diana Lopez Rijos y Yolanda Otero Delgado (los apelantes) solicitan que revoquemos la sentencia sumaria en la que el Tribunal de Primera Instancia (TPI) desestimó con perjuicio la demanda por despido injustificado presentada contra GVS Puerto Rico LLC (GVS o apelado). Oportunamente este último presentó su oposición al recurso de apelación.

I

Los hechos procesales pertinentes para atender este recurso son los siguientes.

Los apelantes presentaron una demanda por despido injustificado al amparo de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, conocida como Ley Sobre Despidos Injustificados, 29 LPRA sec. 185a et seq. ("Ley Núm. 80") y la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, conocida como Ley de Procedimiento Sumario de Reclamaciones Laborales 32 LPRA sec. 3118 et seq. ("Ley Núm. 2") contra la apelada. GVS negó las alegaciones en su contra y pidió la desestimación sumaria de la demanda. La parte apelante alegó que existía controversia de hechos esenciales que impedían adjudicar sumariamente la existencia o inexistencia de justa causa para el despido. Su representación legal alegó la insuficiencia de los estados financieros y la declaración jurada presentada por la apelada para establecer la justa causa. La apelante restó credibilidad a esa prueba y alegó la necesidad de identificar al cliente principal que se hace referencia en los estados financieros, los dos clientes de Fajardo, y la persona que cometió el supuesto error de cobro. Además, de proveer los contratos y facturas sobre el reembolso hecho al cliente principal y una explicación coherente para justificar los aumentos en gastos administrativos, generales, salariales e impuestos sobre la nómina y la información financiera del 2018 al presente. Por último, adujo que la presunción de discrimen por edad se activa con la sustitución por empleados más jóvenes.

Aunque la apelante no se opuso a que se finalizara el descubrimiento, alegó que aún faltaba por resolverse su solicitud de documentos. El TPI declaró NO HA LUGAR, la solicitud para producir los documentos y determinó que no admitiría prueba posterior al cierre del descubrimiento de prueba.

El foro primario declaró HA LUGAR la sentencia sumaria y desestimó la querella con perjuicio. El TPI concluyó que no existía controversia sobre los hechos siguientes. La querellada opera una

planta en el Municipio de Fajardo en la que existen las áreas de manufactura, calidad, producción, "supply chain", ingeniería, mantenimiento y recursos. Dicha parte redujo sus costos, previo al 31 de enero de 2023, mediante la cancelación de actividades para empleados, la eliminación del tercer turno y el empleo desde casa. La apelante no controvirtió ese hecho y admitió que de la Declaración Jurada de David Jara surge un plan de reorganización que incluía el traslado de operaciones al exterior. El patrono evaluó sus ganancias durante el año 2022 y principios del año 2023 y concluyó que tenía que reducir los gastos. Por esa razón, aumentó la competitividad, evaluó su plantilla de empleados y eliminó puestos que no eran necesarios para la operación. La apelante no controvirtió ese hecho y alegó la necesidad de considerar los estados financieros previos al 2020.[1]

Según el TPI también se probaron los hechos a continuación. El patrono evidenció que perdió sobre $5,000,000.00 en el año 2022 y cerca de $4,000,000.00 en el año 2023. El patrón de pérdidas continuó en el 2024. La apelante no controvirtió el patrón de pérdidas ocasionadas primordialmente por la reducción sustancial de órdenes. Durante el año 2021 la apelada recibía unas 900,000 solicitudes de filtros mensuales y en el año 2022 se redujeron a 500,000. La apelante no controvirtió ese hecho. Los gastos operacionales y los costos de producción aumentaron a partir del año 2021 y continúan aumentando. Dicho aumento ocasionó una reducción del margen de ganancia. Los aumentos en gastos consistieron en salarios, materia prima, empaque del producto, equipos de manufactura, transportación, filtros, electricidad y

---

[1] Véase Sentencia, Sistema Unificado de Manejo y Administración de Casos (SUMAC), Determinaciones de Hecho números 1 a 4, entrada numero 66 ante el Tribunal de Primera Instancia (TPI).

generador. La demandante no controvirtió los aumentos de gastos operacionales.[2]

El foro apelado, además estableció los hechos a continuación. El 31 de enero de 2023, la apelada hizo una reorganización y reducción de personal en la que eliminó el segundo turno y despidió treinta y siete empleados. La apelada aceptó que ese hecho estaba probado. Posteriormente, continuó monitoreando sus operaciones incluyendo las ganancias, pérdidas y proyecciones de pérdidas para los años 2023 y el 2024. La apelante no controvirtió ese hecho. La apelada proyectó que las pérdidas continuarían y auscultó alternativas para optimizar sus operaciones y reducir los costos operacionales. La apelante no controvirtió ese hecho y alegó que el patrono debió auscultar otras alternativas. Durante el mes de noviembre de 2023, la apelada eliminó puestos y pasó sus funciones a la subsidiaria, o a los supervisores o empleados que conservaron sus puestos. La querellante no controvirtió ese hecho. El patrono identificó los puestos que eliminaría. Los empleados en esos puestos serían despedidos indistintamente de su edad y antigüedad. La querellante no controvirtió ese hecho. La eliminación de puestos, además, perseguía cambiar los procesos y operaciones para simplificarlos. La apelada eliminó los puestos de quality investigator USA, producto reléase coordinator, producto complait investigator I y II, buyer, material coordinator y manufacturing engineer. La querellante confirmó la eliminación de esos puestos.[3]

Por último, el TPI determinó los hechos a continuación. Grace Ramos Treviño a la fecha de su despido trabajaba como material coordinator y admitió que fue despedida junto a las demás personas que ocupaban ese puesto. Nancy Crespo Dones ocupaba el puesto

---

[2] Véase Sentencia, en SUMAC, Determinaciones de Hecho números 7 a 9, entrada numero 66 ante el TPI.
[3] Véase Sentencia, en SUMAC, Determinaciones de Hecho números 10 a 16, entrada numero 66 ante el TPI.

de producto reléase coordinartor. Fue despedida el 1 de diciembre de 2023 y se le entregó una carta en la fue notificada de su separación. Crespo admitió que le informaron que su despido se debió a una reorganización. Además, reconoció que no presentó una queja por discrimen. Erick Olmeda ocupaba el puesto de producto investigator I hasta su despido el 1 de diciembre de 2023. El señor Olmeda dijo que desconocía, porque alegaba discrimen y que había que verificarlo con el licenciado. Rosalía Breu Rosario ocupaba el puesto de quality inspector hasta su despido el 1 de diciembre de 2023. La señora Breu admitió que personas mucho más jóvenes también fueron despedidas. Diana López Rijos ocupaba el puesto de manufacturing quality inspector. El 1 de diciembre de 2023, fue despedida y recibió una carta titulada Notificación de Separación. La señora dijo que desconocía el papel que jugó la edad en su despido. Yanira L. Cartajena Peña trabajaba como manufacturing quality Inspector hasta su despido el 1 de diciembre de 2023. La demandante admitió que el criterio de antigüedad no fue considerado para su despido y que sacaron a todos los empleados que ocupaban su mismo puesto incluyendo los nuevos y los viejos. Edna Gisela Rivera Rosado ocupaba de compliance investigator II hasta su despido el 1 de diciembre de 2023. La señora Rivera dijo que no sabía si su edad jugó un papel en su despido. Tampoco pudo contestar la razón por la que fue discriminada. Yolanda Otero Delgado ocupaba el puesto de buyer hasta su despido el 1 de diciembre de 2023. La señora Otero declaró en su deposición que entendía que fue despedida por su edad.[4]

El foro primario se convenció de que la apelada despidió a los apelantes debido a una reorganización de la empresa. El TPI determinó que el patrono los despidió justificadamente. Según el TPI

---

[4] Véase Sentencia, en SUMAC, Determinaciones de Hecho números 17 a 24, entrada numero 66 ante el TPI.

los apelantes no presentaron prueba para controvertir que los despidos fueron parte de una reorganización para mitigar las pérdidas económicas que hacía dos años sufría la empresa. Fue enfático en que los apelantes admitieron que desconocían las razones por las que querella fue presentada. El 4 de noviembre de 2025 el TPI declaró HA LUGAR la moción de sentencia sumaria y desestimó con perjuicio la demanda. La parte apelante presentó este recurso en el que alega que:

1) Erró el Tribunal al concluir que no existía controversia sustancial sobre la existencia de prueba sobre una reducción en producción, ventas o ganancias levantada por los querellantes en su oposición a sentencia sumaria.

2) Erró el Tribunal al adjudicar credibilidad a los estados financieros de la parte querellada pese a su impugnación fundamentada y a la falta de prueba corroborativa sobre una supuesta responsabilidad descubierta.

3) Erró el Tribunal al no invocar presunciones adversas sobre la fiabilidad de la información contenida en los estados financieros donde el patrono rehusó producir prueba documental adicional para sustentar lagunas sustanciales.

## II.
### A
### Moción de Sentencia Sumaria

Nuestro ordenamiento procesal civil reconoce el uso y valor que tiene la sentencia sumaria para asegurar una solución justa, rápida y económica de los casos. La herramienta procesal de la sentencia sumaria posibilita la pronta resolución de una controversia, cuando no es necesario celebrar un juicio en su fondo. No obstante, para que proceda es necesario que de los documentos no controvertidos surja que no hay controversia real y sustancial sobre los hechos materiales del caso. Un hecho material es aquel

que puede afectar el resultado de la reclamación, de acuerdo con el derecho sustantivo aplicable. La controversia sobre los hechos materiales tiene que ser real. Cualquier duda es insuficiente para derrotar una moción de sentencia sumaria. La sentencia sumaria procede cuando no existe controversia de hechos materiales y únicamente resta aplicar el derecho. *Soto y otros v. Sky Caterers,* 2025 TSPR 3 (2025) 215 DPR ___ (2025)*; Cruz, López v. Casa Bella y otros,* 213 DPR 980, 993 *(*2024); *Universal Ins. y otro v. ELA y otros,* 211 DPR 455, 471-472 (2023).

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, exige el cumplimiento de ciertos requisitos. La parte contra quien se haya formulado una reclamación podrá presentar una moción de sentencia sumaria, no más tarde de los treinta (30) días siguientes a la fecha límite establecida por el tribunal para concluir el descubrimiento de prueba, según lo dispuesto en la Regla 36.2, 32 LPRA Ap. V. La Regla 36, *supra,* contiene los requisitos de forma para instar una moción de sentencia sumaria y su respectiva oposición. La parte que sostenga la inexistencia de una controversia sustancial de hechos esenciales y pertinentes debe presentar una moción que se funde en declaraciones juradas u otra evidencia admisible. Además, tanto la moción como la oposición deberán cumplir con lo establecido en la Regla 36.3, *supra.* La sentencia sumaria no puede dictarse cuando, (1) existen hechos esenciales controvertidos, (2) la demanda tiene alegaciones afirmativas que no han sido refutadas, (3) existe una controversia real sobre algún hecho esencial o material que surge de los propios documentos que acompañan la moción o (4) no procede como cuestión de derecho. *Universal Ins. y otro v. ELA y otros,* supra, pág. 472.

La Regla 36.3(e), supra, dispone que el tribunal dictara sentencia sumaria si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las

declaraciones juradas, si las hay u otra evidencia demuestran que no existe controversia real sustancial en cuanto a algún hecho esencial y pertinente. La sentencia sumaria además deberá proceder como cuestión de derecho. *Soto y otros v. Sky Caterers, supra.* Las declaraciones juradas en apoyo u oposición a la moción de sentencia sumaria tienen que estar basadas en el conocimiento personal del o de la declarante, contener hechos admisibles en evidencia y demostrar que el declarante está cualificado para declarar sobre su contenido. Regla 36.6 de Procedimiento Civil, 32 LPRA Ap. V. El Tribunal Supremo de Puerto Rico resolvió en *Ramos Pérez v. Univisión,* 178 DPR 200, 216 (2010), que las declaraciones juradas con solo conclusiones y sin hechos específicos que las apoyen, no tienen valor probatorio y son insuficientes para demostrar la existencia de lo que allí se concluye. Las declaraciones juradas que son meramente conclusiones reiteradas de las alegaciones de la demanda y hechas sin conocimiento personal, son insuficientes para derrotar una moción de sentencia sumaria.

El uso de la sentencia sumaria no es aconsejable en casos en los que existe controversia sobre elementos subjetivos, de intención propósitos mentales o negligencia o cuando el factor credibilidad es esencial y está en disputa. No obstante, puede utilizarse en esos casos, cuando los documentos en apoyo a la sentencia sumaria demuestran la falta de hechos esenciales en controversias. *Cruz, López v. Casa Bella,* supra pág. 993. Los casos laborales y de discrimen no están exentos de resolverse sumariamente. La sentencia sumaria no está excluida de ningún procedimiento en particular ni tipo de caso y puede funcionar en cualquier contexto sustantivo. *Ramos Pérez v. Univisión Puerto Rico,* supra, págs. 219-220. No obstante, los tribunales deben examinar rigurosa, detenida y cuidadosamente los hechos que surgen de los casos de discrimen en el empleo. *Soto y otros v. Sky Caterers,* supra.

El Tribunal de Apelaciones se encuentra en la misma posición que el Tribunal de Primera Instancia, al momento de revisar las solicitudes de sentencia sumaria. Al igual que el TPI tiene que regirse por la Regla 36, *supra*, y aplicar los criterios que esa regla y su jurisprudencia interpretativa exigen. Ambos foros tienen que revisar que la moción de sentencia sumaria y su oposición cumplan los requisitos de forma codificados en la Regla 36, *supra*. El Tribunal de Apelaciones no podrá considerar evidencia que las partes no presentaron en el Tribunal de Primera Instancia. Este foro tampoco podrá adjudicar los hechos materiales en controversia, porque esa es una tarea del Tribunal de Primera Instancia. La revisión que hace el Tribunal de Apelaciones es la de un juicio de *novo*. El foro apelativo debe examinar el expediente de la manera más favorable para la parte opositora a la moción de sentencia sumaria y hacer todas las inferencias permisibles a su favor. *Soto y otros v. Sky Caterers,* supra*; Cruz, López v. Casa Bella y otros,* supra; *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 118 (2015).

Al revisar una sentencia sumaria, el Tribunal de Apelaciones tiene que evaluar si realmente existen hechos materiales en controversia. Cuando determina que existen hechos materiales en controversia debe exponer cuáles son. Además, tiene que determinar cuáles están incontrovertidos. Si encuentra que todos los hechos materiales están realmente incontrovertidos, procede que revise de *novo*, si el TPI aplicó correctamente el derecho. *Soto y otros v. Sky Caterers,* supra*, Cruz, López v. Casa Bella,* supra pág.994; *Meléndez González et al. v. M. Cuebas,* supra, pág. 119.

**LEY DE DESPIDO INJUSTIFICADO, LEY NÚM. 80 DE 30 DE MAYO 1976**

Nuestro ordenamiento jurídico protege el derecho de la clase trabajadora a la tenencia de su empleo. No obstante, eso no impide el despido de un empleado. La Ley Núm. 80, *supra*, establece un

balance en las relaciones entre patronos y empleados. Su propósito es proteger el derecho de los trabajadores contra las acciones arbitrarias y caprichosas de sus patronos. El legislador otorgó a los trabajados remedios más justicieros y consustanciales con los causados por un despido injustificado. El patrono está obligado a pagar una mesada, cuando despide sin justa causa a un empleado contratado por tiempo indeterminado. Aunque la ley no contiene la definición de despido injustificado, incluye varias circunstancias en las que se entiende que hubo una justa causa. Algunas circunstancias están basadas en la conducta del trabajador y otras en el curso decisorio de la gerencia de la empresa. El cierre, la reorganización, la reducción en la producción ventas o ganancias pertenecen al segundo grupo. El legislador estableció en los incisos d, e y f del Artículo 2 de la Ley Núm. 80 *supra,* las circunstancias que afectan el buen y normal funcionamiento de la empresa y justifican el despido. El inciso (d) contempla como justa causa el cierre total temporero o parcial, el (e) la reorganización y el (f) las reducciones en el empleo necesarias, debido a una reducción en el volumen de producción, ventas o ganancias anticipadas o prevalecientes al ocurrir el despido o con el propósito de aumentar la competitividad o productividad del establecimiento. Las circunstancias contempladas en estos tres incisos giran en torno a las actuaciones del patrono relacionadas a la administración de su negocio y que ocurren principalmente por las razones económicas que enfrenta la operación diaria. El mero capricho y la falta de una razón relacionada con el buen y normal funcionamiento del establecimiento no son justa causa. Las empresas solo estarán exentas del pago de mesada, cuando enfrenten alguna de las circunstancias contempladas en la ley. Aun en esos casos, están obligadas a retener al empleado con más antigüedad, siempre que subsistan vacantes dentro de su clasificación ocupacional ocupadas

por personas de menor antigüedad. La reclasificación por antigüedad no aplica a clasificaciones ocupacionales distintas. *Segarra Rivera v. Int'l. Shipping et al.,* 208 DPR 964, 982- 985 (2022).

La reorganización de un negocio solo constituye justa causa para el despido cuando es bona fide y está relacionada al manejo de la empresa. De ningún modo puede ser producto del mero capricho del patrono. Las modificaciones a la forma de hacer negocios incluyen los cambios dirigidos a optimizar los recursos y aumentar las ganancias. Las medidas tomadas incluyen la eliminación y creación de plazas o fusión de las existentes para enfrentar los problemas financieros o de competitividad. Las reformas en ocasiones exigen prescindir de labores hasta entonces útiles para el funcionamiento del negocio y la incorporación de posiciones nuevas con otras destrezas necesarias para lograr metas empresariales actualizadas. *Segarra Rivera v. Int'l. Shipping et al., supra,* págs. 985-987.

El Tribunal Supremo de Puerto Rico resolvió que el patrono está obligado a presentar evidencia para acreditar el plan de reorganización implantado y su utilización. No obstante, aclaró que no estaba sujeto a acreditar la existencia de un proceso o plan de reestructuración de una forma particular o especifica. El patrono solo está obligado a demostrar que la acción respondió a una decisión gerencial válida a la luz de las circunstancias y que no fue producto de un mero capricho. *Segarra Rivera v. Int'l. Shipping et al., supra,* pág. 1002.

Por otro lado, no toda merma en ventas o ganancias se traduce en justa causa para un despido. La justa causa únicamente ocurre en situaciones en la que la disminución sea sustancial, a punto de atentar contra la continuidad de la empresa. El patrono tiene que evidenciar la alegada disminución en la producción, venta o ganancias y establecer un nexo causal entre sus circunstancias

económicas y la necesidad del despido. Para justificar el despido debe presentar evidencia acreditativa del plan de reorganización implantado y su utilidad o de la alegada disminución en la producción, venta o ganancias según corresponda. *SLG Zapata Rivera v. J.F. Montalvo,* 189 DPR 414, 426-427 (2013). La Ley Núm. 4-2017 enmendó la Ley Núm. 80, *supra,* para entre otras razones ampliar los criterios de reorganización o reducción de personal y añadir una nueva circunstancia que justifica reducir la plantilla de empleados para aumentar la competitividad o productividad del establecimiento. *Segarra Rivera v. Int'l. Shipping et al,* págs. 986-987.

La Ley Núm. 80, supra, establecía una presunción de despido injustificado antes de ser enmendada por la Ley Núm. 4-2017. El patrono estaba obligado a derrotar esa presunción mediante evidencia preponderante para demostrar justa causa para el despido. La Ley Núm. 80 *supra,* invertía el orden de la prueba establecido en los casos civiles. Esta legislación estableció una excepción a la norma general de que el demandante está obligado a probar sus alegaciones para prevalecer en el caso. No obstante, el empleado demandante tenía que demostrar que fue despedido, como el hecho básico que daban lugar a la presunción. La Ley de Transformación y Flexibilidad Laborar entró en vigor el 26 de enero de 2017 y eliminó esa presunción. Las enmiendas incorporadas en esa legislación eliminaron la frase que imponía el peso de la prueba al patrono. Los empleados contratados con anterioridad a que entrara en vigor la ley continuaron disfrutando los mismos derechos y beneficios que tenían previamente. El Tribunal Supremo de Puerto Rico resolvió que la supresión de la presunción no aplica retroactivamente y que la ley aplicable es la vigente al momento de los hechos que dieron lugar a la causa de acción por despido

injustificado. *Ortiz Ortiz v. Medtronic,* 209 DPR 759, 774-776, 782 (2022).

## DISCRIMEN

La Ley Núm. 100 de 30 de junio de 1959, responsabiliza civil y criminalmente al patrono que discrimine contra de un aspirante de empleo o un empleado. La reforma laboral del año 2017 eliminó la presunción de discrimen que transfería al patrono el peso de la prueba. No obstante, el peso de persuadir al tribunal siempre ha recaído en el demandante. El esquema probatorio en los casos de discrimen es el siguiente. El demandante tiene que establecer mediante preponderancia de la prueba un caso prima facie de discrimen. Los criterios para demostrar un caso priman facie de discrimen son los siguientes. (1) el empleado es miembro de un grupo protegido, (2) el empleado estaba cualificado para el trabajo, (3) el empleado fue despedido, y (4) el patrono buscó reemplazarlo por otra persona con cualificaciones similares. Luego de que la demandante establece un caso prima facie de discrimen, se activa una presunción a su favor. El peso de la prueba se transfiere a patrono, que solo tiene que evidenciar una razón no discriminatoria para la acción adversa. El patrono no tiene que convencer al juzgador de que la razón proferida constituye la verdadera causa o en estricto derecho una justa causa para el despido. La presunción de discrimen desaparece cuando el patrono ofrece su explicación. El demandante tiene la oportunidad de demostrar con prueba preponderante que la razón que ofreció el patrono es un pretexto para ocultar el discrimen intencional. *Jiménez Soto v Carolina Catering Corp.* 2025 TSPR 3.

A manera de ejemplo, el demandante en un caso de discrimen por edad tiene que evidenciar en su primer turno que (1) pertenece a la clase protegida por el estatuto a saber su edad, (2) o estaba cualificado para ejercer el puesto que ocupaba o (3) fue despedido o

sustituido por una persona más joven. El patrono puede rebatir la presunción de tres maneras (1) derrotando el hecho básico o ausencia de justa causa, (2) derrotando el hecho presumido de que el despido fue discriminatorio o (3) destruyendo a la vez el hecho básico o presumido. El patrono puede probar que el despido no fue discriminatorio mediante evidencia circunstancial, aunque no exista justa causa. Si el patrono derrota la presunción, el empleado tiene que presentar prueba para establecer discrimen, sin el beneficio de dicha presunción. No obstante, cuando un patrono despide a un empleado mediante justa causa, no puede ser responsable al amparo de la Ley Núm. 100. *Segarra Rivera v Int Shipping Agency Ic.* supra, págs. 989-990.

### III

La apelante discutió conjuntamente los errores señalados, porque entiende que estaban íntimamente relacionados. Su representación legal pone en entredicho la determinación de justa causa, porque está basada en los estados financieros de la apelada. La apelante le resta credibilidad a los estados financieros, porque alega que la apelada los preparó para justificar el traslado de operaciones a México. Dicha parte alegó en su oposición a la moción a sentencia sumaria que para demostrar que el despido era injustificado era necesario (1) identificar al cliente principal al que se hace referencia, (2) proveer el nombre de los dos clientes de la planta de Fajardo, (3) conocer la identidad de quien cometió el supuesto error de cobro, (4) proveer los contratos y facturas de reembolso del cliente principal, (5) proveer una explicación coherente para justificar los aumentos en gastos administrativos, generales, y salariales y los impuestos sobre la nómina y (6) la información financiera desde el año 2018 al presente. Su representación legal insiste en que la apelada no proveyó esa información que es necesaria para demostrar que el despido fue

injustificado. Además, le resta credibilidad a la declaración jurada que la apelada acompañó con la moción de sentencia sumaria.

Por su parte, la apelada arguye que probó que la empresa sufrió pérdidas económicas sustanciales que la obligaron a realizar una reorganización que conllevó el despido de los apelantes. Su representación legal advierte que la propia apelante reconoció que el patrono hizo una reorganización de la empresa.

**La apelada tiene razón.** El patrono probó justa causa, porque presentó la prueba necesaria para demostrar que los despidos respondieron a una decisión gerencial válida motivada por la merma de ingresos, las pérdidas económicas y el aumento en gastos. Los estados financieros, la declaración jurada de David Jara Sanhueza, la comunicación a todos los empleados del 25 de enero de 2023, la carta de despido y los testimonios de los apelantes confirman que no existe controversia de que los despidos fueron justificados y no fueron un mero capricho del patrono. La apelante ha alegado la necesidad identificar el cliente principal al que se hace referencia en los estados financieros, a los dos clientes de Fajardo y a la persona que cometió el supuesto error de cobro. Además, de presentar evidencia de los contratos y facturas de reembolso al cliente principal, proveer una explicación coherente para justificar los aumentos de gastos administrativos y generales y salariales, de los impuestos sobre la nómina y de información financiera para los años 2018 al presente. Los ataques a la confiabilidad de los estados financieros están basados en especulaciones. La evidencia que pretende descubrir la apelante es impertinente para derrotar la confiabilidad de los estados financieros. La apelante no presentó ninguna evidencia que controvirtiera los estados financieros del 31 de diciembre de 2021 y el 31 de diciembre de 2022, auditados por una firma independiente. Los estados financieros evidenciaron las pérdidas económicas que obligaron a la apelada a la

reestructuración de su negocio y que conllevó el despido de los apelantes.

La declaración jurada del señor David Jara Sanhueza cumple con los requisitos para que prospere la sentencia sumaria. El deponente hizo constar su propio y personal conocimiento sobre los hechos que estaba declarando y que la información estaba disponible en los récords en su custodia. Además, declaró específicamente sobre los hechos esenciales que demuestran la existencia de justa causa para el despido. Su testimonio fue el siguiente. Desde el 1 de diciembre de 2021 hasta el 31 de mayo de 2022 fue managing director de la apelada. A partir de junio de 2022 fue director regional de la apelada. Durante el tiempo que ocupó ambos puestos estuvo a cargo de las operaciones de la planta de Fajardo. Como director general custodiaba **(1) los récords de los procesos de manufactura, política y prácticas de la compañía,** (2) **los estados financieros y (3) las descripciones de puestos y documentos preparados en la implementación de decisiones de negocio, incluyendo la reorganización y reducción de personal.** Igualmente, custodió **(1) los Financial Statement de 31 de diciembre de 2021 y 2022,** (2) el Excel Date Base Layoff, (3) la Notificación de Cancelación de Segundo Turno, (4) la carta titulada Notificación de Separación y (5) los Jobs Description, anejados como evidencia. Estos documentos son copia fiel y exacta de los originales que están en los archivos de la apelada y que fueron creados en el curso regular de sus operaciones.

El director general, además declaró lo siguiente. La apelada tuvo la intención de trasladar las operaciones de manufactura a México, desde que adquirió la planta de Fajardo. El traslado incluía las líneas de inuction molding y ensamblaje. Durante el año 2022 y a principios de 2023, participó activamente en una evaluación que hizo la apelada de sus ganancias y concluyó que era necesario

reducir gastos, eliminar puestos innecesarios y aumentar la competitividad. Además, preparó un formulario en Excel titulado Layoff junto a Paola Musuraca sobre las proyecciones de ganancia y pérdidas, conforme a la información provista en los reportes financieros. El formulario incluyó un estimado de la cantidad de empleados que iban a ser impactados por la reorganización y o reducción de personal. Igualmente se consideraron los puestos y o funciones para el 31 de enero de 2023, la necesidad operacional y a la antigüedad. Los financial report fueron preparados y auditados por dos compañías de auditores externos y evidenciaron pérdidas de sobre $5,000.000 en el año 2022 y cerca de $4,000,000.00 en el año 2023. Durante el año 2024 se esperaba una pérdida de alrededor de $1,000.000.00. La reducción de órdenes fue una de las razones principales para las pérdidas de la apelada. La demanda de filtros se redujo sustancialmente de $900.00 al mes en el año 2021 a 2022, a actualmente $500.00, debido a una acumulación de órdenes. El margen de ganancias se redujo a partir del 2021, por el aumento en gastos operacionales y los costos de producción. Estos gastos también ocasionaron pérdidas. La empresa aumentó los gastos de (1) salarios, (2) materia prima, (3) empaque del producto, (4) los equipos de protección de los empleados del área de manufactura, (5) transportación de filtros, (6) electricidad y (7) del generador de planta.

David Jara hizo estas otras declaraciones. Durante el mes de enero de 2023, la apelada determinó realizar una reorganización. El 25 de enero de 2023 publicó un memorando en la que informó dicha intención a los empleados. El contenido de esa comunicación forma parte de la declaración jurada. El 31 de enero de 2023 la apelada se reunió con cada uno de los afectados para informarles su despido y le entregó la decisión por escrito. La reorganización y la reducción de personal impactaron las áreas de calidad y manufactura. La

compañía despidió 37 empleados como resultado de la reorganización. Los empleados despedidos fueron (1) assemblers, (2) un QA incoming inspector y (3) un product release coordinators entre otros. Los assemblers fueron despedidos de acuerdo con el criterio de antigüedad. Los empleados de 18 o más años de antigüedad permanecieron en el empleo y todos los que tenían 16 años o menos fueron despedidos. El patrono, además consideró, la línea en que trabajaron el último año los assamblers y la necesidad operacional. La apelada no despidió a los assemblers con diecisiete años de antigüedad que (1) trabajaban en la línea GPT, (2) trabajaban únicamente en la línea Leuko y tenían menos acciones disciplinarias (3) participaron en algún proyecto y o área especial necesaria para la operación y los (4) trabajaban en ambas líneas.

Por último, el director general hizo las declaraciones siguientes. La apelada tomó medidas para reducir los costos antes del 31 de enero de 2023. El patrono canceló las actividades para empleados, eliminó el tercer turno y adoptó el trabajo desde casa. A la fecha de hoy la apelada no ha contratado nuevamente assembler producto reléase, coordinator o QA incoming inspector. Tampoco ha tenido vacantes de empleados regulares para esos puestos. Las pérdidas económicas de la apelada continuaron posterior al 31 de enero de 2023 y se proyectaba que continuarían. **El 1 de diciembre de 2023** la apelada despidió 13 empleados. Algunas de las funciones de esos puestos se transfirieron a México. Posterior a los despidos de 2023, la apelada continúo las medidas para reducir los gastos e implementó ventanas de retiro temprano.

La apelante no controvirtió los hechos de propio y personal conocimiento sobre los que declaró el director general de la apelada. Su testimonio no controvertido confirma la veracidad del contenido de los estados financieros auditados que evidencian las pérdidas económicas de la empresa y la justa causa del despido. Jara declaró

que la apelada tuvo la intención de trasladar los trabajos de manufactura a México, desde que adquirió las facilidades de Fajardo. No obstante, su declaración no prueba que el despido fue injustificado. La apelante conocía desde el 25 de enero de 2023 sobre las pérdidas económicas de la empresa y de su proceso de reestructuración que incluyó la eliminación del segundo turno. El 25 de enero de 2023 la apelada se dirigió a todos sus empleados en la siguiente comunicación escrita:

**Algunos negocios y familias han enfrentado situaciones difíciles en estos últimos años. sin embargo GVS se ha mantenido implementando y buscando alternativas para continuar siendo competitivos en el mercado durante estos tiempos. A pesar de todos los esfuerzos realizados lamentablemente hemos tenido que llegar a la determinación de implantar un proceso de reorganización el cual incluye cancelar el segundo turno a partir del miércoles 1 de febrero del corriente año, entre otras medidas. Empleados del 1 er y 2 do turno se están impactando con esta reestructuración. En los próximos días estaremos orientando e impartiendo instrucciones especificas a todo aquel empleado que se vea impactado.**

**Tanto nuestra gerencia corporativa como local continúa trabajando para mantener corriendo el negocio de manera rentable. De igual manera confiamos que continuaran cumpliendo con la asistencia diaria, flexibilidad en las tareas asignadas y la mejor actitud de trabajo en equipo para mantener nuestras operaciones corriendo con la máxima eficiencia que GVS Puerto Rico necesita.**

El patrono entregó a los apelantes la carta de despido el 1 de diciembre de 2023. La apelada les informó por escrito las razones para el despido. El contenido de la carta es el siguiente:

1 de diciembre de 2023
Estimado Empleado
Según le hemos informado, GVS Puerto Rico tomó la decisión de llevar a cabo una reorganización debido a una reducción actual yo anticipada en el volumen de producción ventas y ganancias con el propósito de mantenernos competitivos.

Es por esa razón que muy respetuosamente le informamos que a partir del viernes 1 de diciembre de 2023, su posición quedará eliminada y se dará por terminado su empleo en GVS Puerto Rico LLC.

Usted recibirá todos los salarios de nómina acumulados incluyendo cualquier balance de licencia por vacaciones no utilizado por medio de depósito directo a su cuenta habitual. De igual forma estará recibiendo documentación de cubierta médica y dental conforme con los requisitos de continuidad bajo el plan de COBRA.

Agradeceremos el servicio prestado durante todos estos años y le deseamos mucho éxito en sus proyectos futuros.

Puede contactarse con el Departamento de Recursos Humanos de tener alguna duda y o pregunta

Cordialmente
Diana Garza
HF Manager.

Los testimonios ofrecidos por los apelantes en sus deposiciones no controvirtieron la justa causa para el despido. Por el contrario, confirmaron la eliminación de sus puestos, la reasignación de algunas de sus funciones a empleados en otros puestos, o el traslado de esas funciones a la planta de México y el cumplimiento del criterio de antigüedad. Todas las medidas tomadas por la apelada son válidas en el proceso de reestructuración.

La señora Grace Ramos Treviño ocupaba la posición de material coordinator para la fecha de su despido. Aunque alegó que su despido fue injustificado, reconoció que todos los empleados que ocupaban esa posición también fueron despedidos. Las razones que ofreció para alegar que su despido fue injustificado no proceden en derecho. La apelante declaró que su despido fue injusto, porque otro empleado continúa haciendo su trabajo. No obstante, admitió que el empleado que hacía su trabajo no ocupaba su misma posición y que la apelada le añadió sus tareas a empleados que ocupaban otras posiciones. Según su testimonio, la apelada cargó a los empleados con el trabajo de los despedidos. La apelante admitió que no tenía conocimiento de que de que la apelada contrató empleados para el puesto que ocupaba. Anejo D de la moción de sentencia sumaria, páginas 30, 32, 34-36 de la deposición. La señora Ramos no pudo establecer la razón por la que su despido fue injustificado.

La señora Nancy Crespo Dones ocupaba el puesto de release coordination. La apelante declaró que el patrono le informó que fue despedida, porque su puesto se eliminó como parte de la reorganización de la empresa. Sus argumentos para alegar que fue despedida injustamente se limitaron a declarar que no fue notificada con tiempo de anticipación. Anejo G de la moción de sentencia

sumaria. Página 345 de la deposición. No obstante, es un hecho que todos los empleados conocían los problemas económicos y sobre la reestructuración, desde el 25 de enero de 2023, porque el patrono les informó. La señora Crespo no pudo establecer la razón por la que su despido fue injustificado.

La señora Yolanda Otero Delgado era la única persona que ocupaba el puesto de buyer para la fecha de su despido. Anejo K de la moción de sentencia sumaria, páginas 56, 63 de la deposición. El patrono le informó que su despedido se debía a una reorganización. página 66 de la deposición. Fue despedida en diciembre de 2023. No obstante, sabía que el patrono, ya había realizado despidos en enero de 2023 como parte de una reorganización. La apelante se refirió específicamente a la eliminación del segundo turno. Página 67 de la deposición. Fue cuestionada sobre la razón de la reorganización de la apelada. Su respuesta fue en que en la carta de despido le informaron que estaba relacionado a pérdidas de la empresa. Página 68 de la deposición. La señora Otero no pudo establecer la razón por la que su despido fue injustificado.

Rosalía Abreu Rosario trabajaba como quality inspectors al momento de su despido el 1 de diciembre de 2023. Anejo G de la moción de sentencia sumaria, página 30 de la deposición. La apelante reconoció que la apelada ya había despedido un sinnúmero de personas. Página 31 de la deposición. La señora Abreu negó que el patrono le informó que su despido era parte de una reorganización y reducción de personal. No obstante, fue confrontada con su notificación de separación, donde el patrono le informó que su despido era parte de una reorganización ocasionada por la reducción del volumen de producción y de las ventas y ganancias. Páginas 31-32 de la deposición. La apelante reconoció que su puesto fue eliminado y que todas las otras personas que ocupaban la misma posición también fueron despedidas. Página 34 de la deposición.

Según la apelante, su despido fue injustificado, porque otras personas continúan haciendo el trabajo que realizaba. No obstante, reconoció que la apelada no había abierto ninguna posición de quality inspector. Páginas 34, 36 de la deposición. La señora Abreu no pudo establecer la razón por la que su despido fue injustificado.

La señora Diana López Rijos admitió que todas las personas que ocupaban su puesto como quality inspectors fueron despedidas el 1 de diciembre de 2023. La apelante ya tenía conocimiento de los despidos realizados en enero de 2023, como parte de la reorganización que eliminó el segundo turno. Anejo H de la moción de sentencia sumaria. Páginas 43, 52 de la deposición. La señora López no pudo establecer la razón por la que su despido fue injustificado.

La apelante no ha hecho señalamiento de error alguno relacionado a la desestimación de la reclamación de discrimen. No obstante, es claro que la apelada no responde por la acción de discrimen, debido a que demostró justa causa para el despido. Aun así, los testimonios de los propios apelantes evidencian la inexistencia de una causa de acción por discrimen. La señora Grace Ramos Treviño alegó que el patrono la discriminó, porque le asignó sus tareas a personas con menor tiempo en el empleo. No obstante, admitió que esas personas tenían otros puestos. Página 42 de la deposición. La apelante no pudo contestar si la edad jugó algún papel en su despido. Página 42 de la deposición. La señora Crespo declaró desconocer si la edad estaba relacionada a su despido. Páginas 37, 40 de la Deposición. El señor Olmeda admitió que desconocía sobre las alegaciones de discrimen contenidas en la demanda y dijo que había que verificarlo con el abogado. Página 40 de la Deposición. La señora Otero también desconocía si la edad jugó un papel en su despido. Página 93 de la deposición. Sin embargo, reconoció que la apelada tenía una política contra el

discrimen y que ella nunca presentó una querella de discrimen. Página 102 de la deposición. La señora Abreu declaró que se sintió discriminada, porque el señor Fernández Campos le preguntó varias veces cuando se iba. Página 36 de la deposición. Sin embargo, reconoció que Fernández Campos nunca le hizo un comentario sobre su edad. Además, de que ella nunca le dijo que le disgustaban sus comentarios y nunca se quejó al respecto. Página 38 de la deposición. Aunque dijo sentirse discriminada por su edad, admitió que la apelada despidió personas más jóvenes. Página 39 de la deposición. La señora López Rijos dijo desconocer el factor que tuvo su edad en su despido. La apelante reconoció que la apelada despidió a empleados más jóvenes que ella, que todos los empleados que ocupaban su misma posición fueron despedidos y que la apelada tenía una política contra el discrimen. La señora López no pudo decir quien la discriminó. Páginas 52-53 de la deposición.

David Jara Sanhueza declaró que la edad no fue un factor considerado en la selección de empleados a ser impactados. Además, confirmó que la apelada tiene una política contra el discrimen en el empleo desde que adquirió la planta de Fajardo hasta el presente. Según Jara, la empresa estableció canales para reportar cualquier incidente de discrimen en el lugar de empleo. La Gerente de Recursos Humanos ratificó en su Declaración Jurada que la apelada tiene una política contra el discrimen en el empleo.

La apelada probó que tenía justa causa para despedir a los apelantes. El patrono demostró que tuvo que hacer una reorganización de la empresa para atender sus problemas económicos. La reorganización fue informada a todos empleados aproximadamente un año antes del despido de los apelantes. Durante el mes de enero de 2023, la apelada comenzó la reorganización con la eliminación de uno de los turnos. No obstante, la continuación de los problemas económicos obligó al patrono a

eliminar los puestos de los apelantes conforme a su antigüedad y a reasignar algunas de sus tareas a otros puestos y a sus facilidades en México. La apelada probó que los despidos eran parte de una decisión gerencial válida que realizó a la luz de las pérdidas económicas, aumentos en costos y del proceso de reestructuración que sufrió la empresa y que no fueron un mero capricho.

IV

Por los fundamentos antes expuestos, se confirma la sentencia apelada.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís<br>
Secretaria del Tribunal de Apelaciones